# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

ROBERT J. QUICK, JR.,  :

    Plaintiff,  :

vs.  :    CA 13-0356-KD-C

CAROLYN W. COLVIN,  :
Acting Commissioner of Social Security,
    :
    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits. This action is before the Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the February 19, 2014 hearing before the undersigned, it is recommended that the Commissioner's decision denying plaintiff benefits be reversed and remanded for further proceedings not inconsistent with this decision.

Plaintiff alleges disability due to lumbar degenerative disc disease and disc herniation at L5-S1. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2013.**
>
> **2. The claimant has not engaged in substantial gainful activity since January 1, 2008, the alleged onset date (20 CFR 404.1571** *et seq.***).**

. . .

**3.     The claimant had the following severe impairments: a herniated disc at L5-S1 and lumbar degenerative disc disease (20 CFR 404.1520(c)).**

**4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

. . .

**5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently. He can stand or walk at least six hours per eight-hour workday and can sit at least six hours per workday. The claimant can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. He must avoid climbing ladders, ropes and scaffolding, work at unprotected heights, and work around dangerous machinery.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)— i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

. . .

At the hearing, the claimant testified that he suffers from a herniated disc with back pain, leg numbness and shakiness, fainting spells, left hand numbness, and bilateral knee pain. He stated that he uses a cane to ambulate, and his medication, Lortab, causes drowsiness. The claimant further noted that he has difficulty lifting, walking, climbing stairs, and bending, and he can only stand fifteen to twenty minutes and sit thirty minutes at a time.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's

statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. Specifically, the claimant testified that he has performed work as a lawn care worker since his alleged onset date, and took care of one or two yards per week in 2012 with the use of a riding lawn mower. The claimant does not want to undergo recommended back surgery, and he noted that he goes to the bank, runs errands, drives two or three days per week, prepares meals, cares for his own personal hygiene, washes dishes, sweeps, and attends church.

The objective medical evidence indicates that the claimant suffers from a herniated disc at L5-S1 and lumbar degenerative disc disease, but the claimant's treatment-seeking history, diagnostic test results, clinical signs, symptoms, medications and other prescribed treatment demonstrate that the claimant is able to perform some physical work activities. For example, the claimant visited Edward R. Flotte, M.D., at the Costal Neurological Institute [] on June 11, 2008, due to lumbar spine pain with bilateral leg pain. However, on exam, he had a normal posture and gait, and a full range of motion in all joints.

A lumbar MRI, performed on June 18, 2008, revealed a disc herniation at L5-S1 with moderate right foraminal stenosis, and disc bulging at L2-3 and L3-4. However, nerve conduction studies, performed on June 25, 2008, showed no evidence of any lumbar radiculopathy. Further, that same date, the claimant again had a full range of motion in all joints, and a normal gait. After that time, the claimant continued to visit Costal on a regular basis due to his back pain, with little change in his alleged symptoms or objective findings on exam.

For example, on July 9, 2008, the claimant stated that Lortab was helping his pain, and he had negative straight leg raises on exam and full 5/5 strength throughout his extremities. The claimant also had a normal gait, negative straight leg raises, and no paraspinal muscle spasm on October 30, 2008. The claimant noted that his medications were not controlling his pain on October 28, 2009, but this was due to a reported increased workload, and he continued to have full 5/5 extremity strength, and a negative straight leg raise, with a normal gait. In addition, on June 14, 2011, the claimant denied having any side effects from his medications.

On September 8, 2011, the claimant stated that his lumbar pain was better controlled, and he denied any side effects from his medications. He was also trying to walk for exercise, and he had a negative straight leg raise, a normal gait, no lumbar spasm, and full 5/5 strength in all four extremities according to Edward M. Schnitzer, M.D. The claimant then informed Dr. Schnitzer that he was working part-time on December 7, 2011. Michael A. Granberry, M.D., noted that lumbar x-rays showed mild-to-moderate degenerative disc disease at multiple levels on February 13, 2012. However, on exam, the claimant had normal manual motor testing with

no atrophy or spasm. He also had a normal range of motion and strength in both ankles and knees, with some lower back stiffness and soreness.

Another lumbar MRI, performed March 20, 2012, revealed a moderate disc herniation at L5-S1 with some foraminal encroachment, and disc bulges at L2-3 and L3-4. However, on April 3, 2012, the claimant informed Dr. Schnitzer that he refused recommended epidural steroid injections and physical therapy, and he was attempting to walk for exercise.

William A. Crotwell, III, M.D., a disability examiner, diagnosed the claimant with lumbar degenerative disc disease and a history of left leg radiculopathy, with no evidence of a cause for the radiculopathy on October 29, 2012. However, the claimant noted that he could ambulate without assistance, cook, clean and drive. On exam, the claimant could get on and off the examination table without difficulty, bend past 90 degrees, and bend over. He could toe and heel walk. The claimant had decreased sensation in his left leg below the thigh, but full 5/5 motor strength and a negative straight leg raise while sitting without pain. Lying down, the claimant could also straight leg raise to 80 degrees bilaterally.

As for the opinion evidence, on September 23, 2011, a State Agency Single Decisionmaker opined that the claimant could only perform sedentary work with no climbing of ladders, ropes or scaffolds, and other occasional postural limitations. The undersigned give this opinion regarding the claimant's ability to only perform sedentary [activity] little weight, however, as it is inconsistent with the lack of objective findings during the claimant's medical examinations, and his continued work activity after his alleged onset date. Further, although this Decisionmaker is not a medical professional, the undersigned does find that the suggested postural limitations could be consistent with the claimant's back condition, and gives that portion of the opinion great weight.

In addition, on October 29, 2012, Dr. Crotwell, the disability examiner, summarized that the claimant could perform both light and sedentary work activities with no extensive twisting, torqueing, crawling, or climbing stairs. He also specifically summarized that the claimant could lift up to fifty pounds occasionally and twenty-five pounds frequently, and carry up to twenty-five pounds occasionally and twenty pounds frequently. The claimant could sit for eight[]hours per eight-hour workday, stand six hours per workday, and walk four hours per workday. He was unable to squat or crawl and could occasionally bend and climb. The claimant was also unable to work with any exposure to unprotected heights and only with moderate exposure to moving machinery. The undersigned finds this opinion to be essentially consistent with the claimant's lack of objective findings during his multiple physical examinations, and gives it great weight to the extent that it suggests the claimant can perform light exertional activities. However, Dr. Crotwell's specific opinions regarding the claimant's postural and environmental limitations are not supported by the objective evidence of record,

including his own lack of objective findings on exam, and are given little weight.

Thus, the undersigned finds that the claimant has the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently. He can stand or walk at least six hours per eight-hour workday and can sit at least six hours per workday. The claimant can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. He must [] avoid climbing ladders, ropes and scaffolding, work at unprotected heights, and work around dangerous machinery in order to prevent exacerbation of his pain.

**6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

The claimant has past relevant work as a landscaper, welder and mixer, jobs that are performed at the medium exertional level, according to the vocational expert. Accordingly, the claimant is unable to perform past relevant work.

**7.     The claimant was born on July 22, 1963 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).**

**8.     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).**

**9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that existed in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).**

.    .    .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.18. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.

> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative light and unskilled occupations such as mail clerk (Dictionary of Occupational Titles (DOT) #209.687-026), information clerk (DOT #237.367-018), sales attendant (DOT #299.677-010), and parking lot attendant (DOT #915.473-010). There are 9[,]000, 11,000, 13,000 and 3[,]000 of these jobs in the Alabama economy, respectively, 21,000, 23,000, 25,000 and 10,000 in the regional economy, and 850,000, 950,000, 990,000 and 525,000 in the national economy. Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.
>
> **11.    The claimant has not under a disability, as defined in the Social Security Act, from January 1, 2008, through the date of this decision (20 CFR 404.1520(g)).**

(Tr. 23, 24, 24-27 & 27-28 (internal citations omitted; emphasis in original).) The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and, thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

A claimant is entitled to an award of disability insurance benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a) (2011). In determining whether a claimant has met his burden of proving disability, the Commissioner follows a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, if a claimant is performing substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). At the second step, if a claimant does not have an impairment or combination of impairments which significantly limits his physical or

6

mental ability to do basic work activities, he is not disabled. 20 C.F.R. § 404.1520(c). At step three, if a claimant proves that his impairments meet or medically equal one of the listed impairments set forth in Appendix 1 to Subpart P of Part 404, the claimant will be considered disabled without consideration of age, education and work experience. 20 C.F.R. § 404.1520(d). At the fourth step, if the claimant is unable to prove the existence of a listed impairment, he must prove that his physical and/or mental impairments prevent him from performing his past relevant work. 20 C.F.R. § 404.1520(e). And at the fifth step, the Commissioner must consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. 20 C.F.R. § 404.1520(f). Plaintiff bears the burden of proof through the first four steps of the sequential evaluation process, *see Bowen v. Yuckert,* 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987), and while the burden of proof shifts to the Commissioner at the fifth step of the process to establish other jobs existing in substantial numbers in the national economy that the claimant can perform,[1] the ultimate burden of proving disability never shifts from the plaintiff, *see, e.g., Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 (11th Cir. May 2, 2007) ("If a claimant proves that she is unable to perform her past relevant work, in the fifth step, 'the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform.' . . . Should the Commissioner 'demonstrate that there are jobs the claimant

---

[1] *See, e.g., McManus v. Barnhart,* 2004 WL 3316303, *2 (M.D. Fla. Dec. 14, 2004) ("The burden [] temporarily shifts to the Commissioner to demonstrate that 'other work' which the claimant can perform currently exists in the national economy.").

can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled.'"). [2]

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform those light jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam)[4] (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

The plaintiff framed his sole argument in his brief in the following manner: "The ALJ's RFC finding that the Plaintiff can perform light work is not supported by

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

[3] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

8

substantial evidence. She rejected all opinion evidence and made her own medical determination; this she is not allowed to do." (Doc. 15, at 2.) During oral arguments on February 19, 2014, counsel for plaintiff refined his RFC argument a bit, contending that the ALJ failed to give weight to all of Dr. Crotwell's RFC findings, specifically his findings that plaintiff can only sit, stand and walk one hour each at a time before having to change positions, and, further, improperly assigned great weight to the single decision-maker's postural limitations.

"In assessing medical evidence, the ALJ must 'state with particularity the weight he gave the different medical opinions and the reasons therefor.'" *Gray v. Commissioner of Social Security,* --- Fed.Appx. ---, 2013 WL 6840288, *3 (11th Cir. Dec. 30, 2013), quoting *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir. 1987).[5] To this end, "the opinions of examining physicians are given more weight tha[n] non-examining physicians and the opinions of treating physicians are given more weight than non-treating physicians." *Snyder v. Commissioner of Social Security,* 330 Fed.Appx. 843, 846 (11th Cir. May 29, 2009), citing 20 C.F.R. § 404.1527(d)(1)-(2); *see also Wilcox v. Commissioner, Social Security Administration,* 442 Fed.Appx. 438, 439-440 (11th Cir. Sept. 21, 2011) ("Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians[.]"); *cf. Diamond v. Colvin,* 2013 WL 6231261, *8 (M.D. Fla. Dec. 2, 2013) ("The weight an ALJ must give different medical opinions varies according to the relationship between the medical professional and the claimant."). "'Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding.'" *Gray, supra,* at *3, quoting *Sharfarz, supra,* 825 F.2d at 280.

---

[5] "Absent such a statement, a reviewing court cannot determine whether the ultimate decision is supported by substantial evidence." *Shaw v. Astrue,* 392 Fed.Appx. 684, 686 (11th Cir. Aug. 12, 2010), citing *Hudson v. Heckler,* 755 F.2d 781, 786 (11th Cir. 1985) (per curiam).

9

It need be noted, moreover, that the opinion of an SDM is entitled to no weight as an SDM is not an acceptable medical source. *Compare Cooper v. Commissioner of Social Security,* 521 Fed.Appx. 803, 807 (11th Cir. Jun. 6, 2013) ("[A]s Cooper correctly notes, the ALJ mistakenly referred to the SDM as a doctor and ***should not have given any weight to her opinion because she was merely an SDM***[.]" (emphasis supplied)) *with, e.g., Brown v. Astrue,* 2012 WL 920973, *4 (M.D. Fla. Mar. 19, 2012) (finding that an RFC assessment completed by an SDM with no apparent medical credentials is not an opinion of an acceptable medical source and is not entitled to any weight); and *Hall v. Astrue,* 2012 WL 2499177, *2-3 (N.D. Ala. Jun. 22, 2012) (finding that the ALJ erred in "affording any weight, even minimal weight," to the assessment of the SDM).

With these principles in mind, the undersigned notes two reasons why this action need be remanded to the Commissioner for further proceedings. The ALJ set forth numerous—albeit not all—RFC findings made by the examining disability physician, Dr. William Crotwell, on the Physical Capacities Evaluation he completed on October 29, 2012 (*compare* Tr. 26 *with* Tr. 452) and generally afforded that opinion "great weight to the extent it suggests the claimant can perform light exertional activities[;]" however, he afforded "little weight" to "Crotwell's specific opinions regarding the claimant's postural and environmental limitations[.]" (Tr. 26.) The ALJ's discussion of Crotwell's PCE reflects that she recognized the need to reject certain portions of that opinion she did not believe the evidence supported and set forth her reasons for such rejection. (*See id.*) Such recognition by the ALJ makes it impossible for this Court to ignore the ALJ's wholesale failure to discuss—and specifically reject—Dr. Crotwell's findings that Quick can sit, stand, and walk a total of one hour each "at one time" during an 8-hour workday (*compare id. with* Tr. 452), given that such limitations equate to the ability to perform only those jobs which allow for a sit/stand option, *see Crawford*

*v. Astrue,* 2010 WL 610372, *9 (S.D. Ala. Feb. 18, 2010) (noting that Appeals Council concluded that examining physician's assessment required "a sit/stand option based on a limitation for sitting, standing and walking for not more than 1 hour at a time[]"), and the VE was not posed a hypothetical with a sit/stand option (Tr. 52-54), *see Williams v. Astrue,* 2011 WL 3875615, *2 (M.D. Ala. Aug. 31, 2011) ("At the administrative hearing, a vocational expert testified that a hypothetical individual limited as described by the ALJ—including the option to 'sit, stand, or walk for one hour at a time before needing to change positions for at least 10 minutes'—could perform jobs as a housekeeper cleaner, ticket taker, and microfilm processor."). In other words, the ALJ was required to reject Dr. Crotwell's findings in this regard, *see Crawford, supra,* at *9 ("[T]he ALJ [] noted that Plaintiff's treating cardiologist, Dr. Citrin, opined that Plaintiff is able to walk for four to six hours during an eight hour workday, with no limit on either standing and sitting, and that Plaintiff testified at the April 2007 administrative hearing that he is able to stand at least two hours before sitting. The undersigned finds that both constitute good reasons for rejecting the one hour sit/stand/walk limitation imposed by Dr. Crotwell, and they are supported by substantial evidence."), and in absence of such rejection—or, alternatively a question posed to the VE including such limitations, *see, e.g., Miller v. Barnhart,* 284 F.3d 1219, 1227 (11th Cir. 2002) ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's [limitations].")—"'the undersigned is unable to conduct a meaningful review of the ALJ's evaluation' of the opinion." *Peters v. Astrue,* 2010 WL 2305483, *6 (M.D. Ala. Jun. 8, 2010), quoting *Tolbert v. Astrue,* 2010 WL 962714, *16 (M.D. Fla. Mar. 16, 2010); *cf. Fortes v. Astrue,* 2009 WL 734161, *3 (S.D. Cal. Mar. 18, 2009) ("It is unclear whether the ALJ simply overlooked Dr. Pena's reference to part-time work or whether the ALJ rejected the part-time restriction. To the extent that

the ALJ rejected Dr. Pena's opinion that Plaintiff's mental impairment limited her to a part-time work cycle, the ALJ did not provide reasons for such rejections. Therefore, the Court remands the case so that the ALJ may make findings with respect to whether Plaintiff's mental impairment prevents her from working full-time."). Accordingly, this cause is due to be remanded to the Commissioner of Social Security so that the ALJ can properly evaluate all the specifics of the opinion expressed by Dr. Crotwell to the extent such specifics contrast with the definition of light work and the RFC articulated by the ALJ.

On remand, the ALJ can also correct her error in affording "great weight[]" to that portion of the SDM's RFC opinion related to "postural limitations[,]" the ALJ specifically finding that such limitations "could be consistent with the claimant's back condition[.]" (Tr. 26.) With respect to postural limitations, that is, the ability to bend, squat, crawl, climb, reach, etc., *see Lindsey v. Barnhart,* 161 Fed.Appx. 862, 866 (11th Cir. Jan. 4, 2006) ("For postural limitations, Lindsey could frequently balance, kneel, and crouch, and occasionally could climb, stoop, and crawl."), the SDM, on September 23, 2011—more than one year prior to Dr. Crotwell's RFC (*compare* Tr. 72 (dated September 23, 2011) *with* Tr. 452 (dated October 29, 2012))—concluded that claimant could occasionally climb stairs and ramps, stoop, kneel, crouch and crawl, and never climb ladders, ropes, and scaffolds (Tr. 67). The postural limitations found by the ALJ in this case are identical to those of the SDM (*compare id. with* Tr. 24 ("**The claimant can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. He must avoid climbing ladders, ropes and scaffolding[.]**")) and, therefore, it is apparent to the undersigned that the ALJ did indeed afford "great weight[]" to the SDM's RFC opinion in this regard. This, of course, constitutes additional reversible error. *See, e.g., Cooper, supra,* 521 Fed.Appx. at 807.

## CONCLUSION

The Magistrate Judge recommends that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013) (emphasis in original). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 11th day of March, 2014.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**